# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SHEREE M. BARGOWSKI
An individual,

    Plaintiff,

v.

Civil No. 06-13649
Hon. Anna Diggs Taylor

ABN AMRO INCORPORATED,

    Defendant,

_____/

## MEMORANDUM OPINION AND ORDER

### I.
*Introduction*

Plaintiff, Sheree Bargowski, suffers from multiple sclerosis (hereinafter "MS") and depression. On or about June 17, 2004, Bargowski applied for Short Term Disability Insurance Benefits (hereinafter STD) from her employer, Defendant LaSalle Bank Corporation (formerly known as "ABN AMRO North America, Inc."). On July 27, 2004, Broadspire Services Inc., (hereinafter "Broadspire") the third-party claim administrator for Defendant's STD Plan, denied Plaintiff's request. Broadspire also denied Plaintiff's subsequent administrative appeals of its decision. After Plaintiff exhausted her administrative appeals, she brought this action alleging that Defendant's denial of her application for short-term disability insurance benefits violated the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 et seq. Presently before this court are the parties' cross-motions for summary judgment. For the reasons explained below, Plaintiff's motion is GRANTED and Defendant's motion is DENIED.

**Background**

Plaintiff began working for Defendant on September 9, 1975 and held various positions over her twenty-nine tenure with Defendant. In 1998, Plaintiff was given a Magnetic Resonance Imaging scan ("MRI") of her brain and was diagnosed with MS. At that time, her MS was inactive and did not impede Plaintiff's ability to perform her job duties.

In March 2004, Plaintiff held the position of Bank Manager and was responsible for the sales and promotion of the Defendant's products and services. Further, this position required Plaintiff to meet with clients and outside organizations to promote Defendant's products. It was during this period that Plaintiff began experiencing problems with memory loss and emotional instability, which according to Plaintiff, were attributable to her MS.

On June 11, 2004, Plaintiff saw her primary care physician, Heather L. Holmstrom, M.D. On examination, Plaintiff was tearful and explained her physical and emotional problems to Dr. Holmstrom. Dr. Holmstrom advised that Plaintiff not work for three weeks. On or about June 14, 2004, Plaintiff was examined by Mary Ann McKee, M.D. Upon reviewing Plaintiff's medical history and examining her, Dr. McKee prepared a report noting that she believed that Plaintiff has MS and demyelinating disease. Further, Dr. McKee noticed that Plaintiff was "under a great stress" and thought that it may be due, in part, to Plaintiff's MS. Additionally, Dr. McKee noted that Plaintiff was very tearful and that her gait was stiff and spastic. With respect to Plaintiff's gait, Dr. McKee indicated that she noticed that Plaintiff was persistently exhibiting an "ataxic gate."

Dr. McKee performed coordination and sensory exams on Plaintiff. The coordination exam- which included a finger-to-nose test- revealed that Plaintiff had a mild hint of dysmetria on her left side and the sensory exam showed that proprioception was mildly impaired on the left upper

extremity. Further, Dr. McKee noticed that Plaintiff's tandem gait was mildly impaired and that there was swaying, with the Romberg test. Dr. McKee, however, did not think that Plaintiff was experiencing an exacerbation of her MS in terms of her motor and sensory functions. At this time, Dr. McKee ordered that Plaintiff submit to an MRI to ascertain whether the MS had indeed worsened and she also advised Plaintiff to see a neurologist. Additionally, Dr. McKee advised that Plaintiff seek psychological therapy to help her deal with stress. Dr. McKee further advised that Plaintiff not return to work until she became "psychologically more stable."

Also, on June 14, 2004, Plaintiff began being treated by clinical therapist David Wines, CSW. During Mr. Wines' examination of Plaintiff, he noticed that she was tearful and anxious. Further, Mr. Wines noticed that Plaintiff had involuntary movements and that her gait was somewhat unstable, both of which he assumed were attributable to her MS. Plaintiff told him that she cries frequently, was unable to concentrate, had high anxiety, had trouble sleeping, and had difficulty walking long distances without significant fatigue. Mr. Wines concluded that Plaintiff was suffering from a depressive episode with acute anxiety, which was probably triggered by the combination of work stress and exacerbation of her MS. Based on this conclusion, Mr. Wines felt that Plaintiff was unable to work. Mr. Wines referred Plaintiff to Malini Shenava, M.D., who concurred with his conclusions.

On July 2, 2004, Dr. Holmstrom completed a form stating that Plaintiff was suffering from MS and anxiety. Dr. Holmstrom also noted Plaintiff's problems with her gait and balance. Further, Dr. Holmstrom noted that Plaintiff would be submitting to a MRI on July 16, 2004. As a result, Dr. Holmstrom recommended that Plaintiff refrain from working until August 10, 2004. On July 16, 2004, a MRI was performed on Plaintiff's brain and was later reviewed by Erick Spickler, M.D. Dr.

3

Spickler found that the number of lesions on Plaintiff's brain had increased since Plaintiff's 1998 MRI, thus, indicating a progression of her MS.

On August 2, 2004, Howard S. Rossman, D.O., the Medical Director of the Michigan Institute of Neurological Disorders, examined Plaintiff. Dr. Rossman also mentioned that Plaintiff had several MRIs, with the last taking place on July 16, 2004. Dr. Rossman reviewed Plaintiff's MRIs "in detail" with her and noted that the July 16, 2004 MRI "demonstrated a definite increase in lesion number and burden." Dr. Rossman observed that Plaintiff would cry "easily without warning." Further, his neurological exam of Plaintiff revealed that she had sloppy rapid alternating movements and finger-to-nose maneuvering on her left side. Moreover, Dr. Rossman noticed a mild weakness of dorsiflexion of both feet. This was more apparent in her left foot than in the right foot.

Dr. Rossman stated that Plaintiff was unable to work due to the fact that her job required driving varying distances to meet with clients. Dr. Rossman was of the opinion that these duties would be difficult for Plaintiff to perform, given the multi-faceted nature of her MS symptoms. Those symptoms included the following: "significant fatigue," which limited Plaintiff's ability to complete daily tasks by fifty to seventy-five percent; emotional "lability;" short-term memory and cognitive disturbances; forgetfulness; problems multi-tasking; poor finger-to-nose and rapid alternating movements with the left upper extremity compared to the right; left hemiparesis, which made it difficult for her to walk any distance; and difficulty standing for any prolonged period of time. In addition to the MS symptoms, Dr. Rossman stated that Plaintiff was also experiencing symptoms of reactive depression, which was secondary to her MS.

With respect to medications, when Plaintiff saw Dr. Rossman, she was taking Zoloft 100 mg at night and Effexor XR 75 mg in the morning. Dr. Rossman increased Plaintiff's dosage of Effexor

4

to 150 mg and he recommended that Plaintiff begin Avonex immunomodulatory therapy to prevent the MS from entering its progressive stage.

On September 22, 2004, Dr. Rossman again examined Plaintiff. Dr. Rossman stated that Plaintiff was responding well to the Avonex immunomodulatory therapy. Dr. Rossman noted that it was difficult for Plaintiff to "mobilize" because of her "left-sided" weakness. Because of these symptoms, Dr. Rossman advised that Plaintiff not return to work until December 1, 2004.

*Denial of Plaintiff's STD Claim*

In pertinent part, Defendant's STD policy provides:

> Proof of disability is required. The employee will be sent and is responsible for completing a medical release authorization. The employee's doctor will be required to provide medical documentation as it relates to disability.
>
> * * * *
>
> To be eligible for short term disability, the disability must be deemed as such by the employee's physician and the disability management company. In order receive short term disability benefits due to surgery and recuperation following the surgery, there must be medical necessity. Elective procedures would not be covered under the short term disability (i.e. cosmetic surgery, infertility treatments).

On June 17, 2004, Plaintiff applied for short-term disability benefits and on July 9, 2004, Defendant's claim administrator, Broadspire, sent Plaintiff a letter denying her request for several reasons. First, Broadspire found that Dr. McKee had stated that she did not think that Plaintiff was experiencing an exacerbation of her MS in terms of her motor and sensory functions. Second, Broadspire rejected the documentation from Mr. Wines, stating that it did not support disability, since it failed to explain how Plaintiff's functional deficits would prohibit her from performing the

5

core functions of her job as a bank manager. Finally, Broadspire stated that Mr. Wines failed to provide them with additional information as requested. Broadspire also informed Plaintiff:

> In order to perfect your claim for short term disability benefits the provider needs to submit clinical information which documents the presence of impairments. Such examples would be behavioral observations including the frequency, duration, and intensity of symptoms observed, the results of a formal mental status exam, and/or performance based psychological tests with standardized scores.

The language quoted in this letter does not appear in the copy of the STD Plan that parties submitted to this court.

Plaintiff filed an appeal of this decision and on September 8, 2004, Broadspire denied the appeal. This time Broadspire sent Plaintiff a letter stating that pursuant to Defendant's STD Plan, the definition of disability states:

> An employee must be unable to work at any available ABN AMRO job for which he or she is qualified because of a non-work related illness or injury. The employee must also be under the care of a qualified, appropriate physician during the disability period.

Again, this language does not appear in the copy of STD Plan that the parties have submitted before this court. On appeal, Broadspire forwarded Plaintiff's entire file for review to Vaughn Cohan, M.D., an independent peer review physician specializing in neurology, and Elana Mendelssohn, M.D., an independent peer review physician specializing in clinical and neuropsychology.

After reviewing Plaintiff's medical documentation, Dr. Cohan concluded that the documentation submitted did not demonstrate objective evidence of a functional impairment, which would preclude work-based on neurologic/organic considerations. Dr. Cohan's opinion was based on several deficiencies that he found in Plaintiff's medical documentation. First, he cited Dr.

6

McKee's statement that there had been no exacerbation of the MS with respect to Plaintiff's sensory/motor function. Second, Dr. Cohan rejected Mr. Wines' finding because he found no objective evidence to support a finding that Plaintiff's neurologic symptoms were acute. Third, Cohan rejected Dr. Rossman's opinions, because Dr. Rossman did not provide a clinical report or a report of physical exam findings. Finally, Dr. Rossman reported that Plaintiff suffered from significant fatigue. This however, had not been in the clinical reports from Drs. McKee and Holmstrom.

Dr. Mendelssohn reached the same conclusion as Dr. Cohan for similar reasons. Dr. Mendelssohn stated that neither Mr. Wines nor Dr. Shenava provided sufficient examination findings documenting how Plaintiff's mental status was impacting her ability to perform her job duties. Moreover, with respect to Dr. Rossman's findings, Mendelssohn did not find his conclusions persuasive because he did not provide examination findings substantiating the presence of impairment in cognitive or emotional functioning.

On September 9, 2004, Broadspire sent Plaintiff a letter informing her that her appeal had been denied. Broadspire also informed Plaintiff of her right to further appeal its decision. On September 21, 2004, Plaintiff's lawyers sent a letter to Broadspire further appealing its decision to deny STD. This time, Broadspire forwarded Plaintiff's documentation for review to independent peer review psychologist Lawrence Burstein, Ph.D., independent peer review neurologist Gerald Golberg, M.D., and independent peer review physician Wendy Weinstein, M.D.

After reviewing this information, Dr. Burstein found that the information submitted did not support a finding of disability. Specifically, Dr. Burstein noted the lack of formal mental status examination results or any other performance based tests of Plaintiff's cognitive functioning.

7

Indeed, Dr. Burstein found that the majority of the statements regarding Plaintiff's cognitive functioning indicated that it is intact. Dr. Goldberg also concluded that Plaintiff was not disabled, opining that there was a lack of objective evidence to substantiate such a finding. Dr. Goldberg stated that the medications Plaintiff was taking were meant to protect against depression and there was no indication that the medication would impede Plaintiff's ability to do her job. Dr. Weinstein reached the same conclusion after she reviewed Plaintiff's medical documentation. Dr. Weinstein stated that the documentation did not indicate that Plaintiff's subjective complaints would preclude her from performing her job duties.

Plaintiff also sent Broadspire a letter from Dr. Rossman, detailing her September 22, 2004 examination. Again, Dr. Rossman's recommendations were rejected because of a lack of objective evidence. On December 1, 2004, Broadspire sent a letter to Plaintiff informing her that its Appeal Review Committee had completed a thorough re-examination of the medical evidence in her file and had reached a determination that Plaintiff had failed to submit medical proof supporting a finding of disability. Further, Broadspire informed Plaintiff that the decision was final and therefore, not subject to any additional administrative review. On December 4, 2004, Plaintiff's employment with Defendant ended.

On August 16, 2006, Plaintiff filed a Complaint alleging wrongful denial of STD and long term disability (LTD) in violation of 29 U.S.C. §1132(a). At some point, Defendant granted Plaintiff's claim for LTD but did not reverse its decision with respect to Plaintiff's request for STD benefits. Subsequently, Defendant filed a Motion for Entry of Judgment and Plaintiff filed a Motion to Reverse Denial of STD. The parties appeared before this court for oral arguments on each motion.

II.
*Legal Standard*

A plan administrator's denial of benefits under an ERISA plan is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). In the instant case, it is undisputed that the plan at issue did not provide the claims administrator with discretion to determine Plaintiff's benefits and, therefore, this court will apply a *de novo* review.

The *de novo* standard of review applies to both the factual determinations and legal conclusions of the plan administrator. See *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 613 (6th Cir.1998). When applying the *de novo* standard of review, this court must determine whether the decision was a correct decision without, according the decision-maker, "a presumption of correctness or deference." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 965 (6th Cir.1995). It is the court's primary goal in this situation is "to give effect to the intent of the parties as expressed by the language of the ERISA plan." *Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1005 (6th Cir.1993). The Court may reach on its own inferences and legal conclusions based on the records relied on in the initial decision and the appeal, so long as they are contained within the administrative record. *Perry,* 900 F.2d at 966.

III.
*Analysis*

**A.   The July 16, 2004 MRI Report**

As a threshold issue, this court must determine what evidentiary weight, if any, should be

given to the July 16, 2004 MRI report from Dr. Spickler. Plaintiff argues that she submitted this MRI report to Broadspire along with all of the rest of her medical documentation. Defendant, however, maintains that the administrative record it submitted to this court is complete and the fact that it did not include the July 16, 2004 MRI report means that Plaintiff did not submit it to Broadspire.

The Sixth Circuit has held that when a court is reviewing a Plan Administrator's decision *de novo*, the court is confined to the record that was before the Plan Administrator. See *Wilkins,* 150 F.3d at 615.[1] Plaintiff argues that this court may consider evidence outside of the administrative record, if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. See *Wilkins,* 150 F.3d at 619. Although Plaintiff argues that she is entitled to avail herself of this argument culled from Judge Gilman's concurring opinion in *Wilkins,* outside of her conclusory allegations, Plaintiff has not shown how there was a lack of due process or any bias. Consequently, this court will not consider the July 16, 2004 MRI report when rendering its decision. This court, however, will consider references that Dr. Rossman made to the report, since this information is a part of the administrative record.

**B.    Terms of the Plan**

In interpreting a disability plan under ERISA, a court applies "federal common law rules of

---

[1] It is interesting to note that the Seventh Circuit has held that under a *de novo* standard, the court has the discretion to consider evidence outside the administrative record where necessary to make an informed and independent judgment. *Casey v. Uddeholm Corp.,* 32 F.3d 1094, 1099 (7th Cir.1994). Moreover, in *Quisenberry v. Life Ins. Co. of North America,* 987 F.2d 1017 (4th Cir.1993), the Fourth Circuit held that a court may consider additional evidence, but only when circumstances clearly establish that additional evidence is necessary.

contract interpretation in making [a] determination." *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 556 (6th Cir.1998). "The general principles of contract law dictate that [the court] interpret the Plan's provisions according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.,* 150 F.3d at 556. In doing so, the court "gives effect to the unambiguous terms of the contract" in determining whether the denial of benefits was proper under the terms of the plan in question. *Id.*

Defendant's STD policy provides that in order to be eligible "the disability must be deemed as such by the employee's physician and the disability management company." The STD policy requires that a claimant provide proof of disability via medical documentation. The policy, however, is silent as to the criteria the disability company may apply in deciding what constitutes a disability. Moreover, the Plan is silent as to what kind of medical documentation may or may not be used to prove disability under the plan. When Broadspire, however, initially denied Plaintiff's request for STD, it stated in pertinent stated:

> . . . to perfect your claim . . . the provider needs to submit clinical information which documents the presence of impairments. Such examples would be behavioral observations including the frequency, duration, and intensity of symptoms observed, the results of a formal mental status exam, and/or performance based psychological tests with standardized scores.

Further, in the subsequent denials of Plaintiff's appeals, Defendant's letters contained the following language:

> An employee must be unable to work at any available ABN AMRO job for which he or she is qualified because of a non-work related illness or injury. The employee must also be under the care of a qualified, appropriate physician during the disability period.

This court recognizes that it must not add or modify the terms of a contract. See *Wikoff v. Vanderveld,* 897 F.2d 232, 238 (7th Cir.1990), (holding that if the language of the contract provides an answer, then the inquiry is over; parol evidence is neither necessary nor admissible). To the extent that these letters were an attempt by Broadspire to add or modify the terms of the Plan, the court recognizes the application of the parol evidence rule and will be by bound by the unambiguous terms of the Plan. Hence, it will not consider these additional terms when analyzing whether Plaintiff has submitted sufficient medical evidence of her disability. Accordingly, this court will find that Plaintiff is entitled to STD benefits under the terms of the Plan if she has shown that she produced medical documentation proving that she is disabled.

**C.     Claim for STD Benefits**

Broadspire's peer review physicians and peer review psychologist rejected the findings of Plaintiff's physicians and Mr. Wines, essentially stating that there was not enough objective evidence to support their findings of disability. The Plan, however, does not require that the medical documentation provided to prove disability must be based on objective findings. Indeed, by requiring Plaintiff to provide objective evidence in support of her claim for STD benefits, Defendant is asking Plaintiff to meet an additional requirement for eligibility beyond those imposed by the Plan. Moreover, the Plan does say that self-reported or "subjective" factors should be accorded less

significance than other indicators. See *Glenn v. MetLife*, 461 F.3d 660 (6th Cir. 2006) (finding that it was unreasonable for a plan to refuse to consider the effect of plaintiff's "stress," when the plan did not say that self-reported or subjective factors should be accorded less significance than other indicators).[2] Therefore, a denial of Plaintiff's claim of STD benefits for the lack of objective evidence is unreasonable, as it is not supported by the clear language of the Plan.

Even if the Plan did clearly require a showing of objective evidence of a disability, Plaintiff has presented objective clinical information which documented the presence of impairments. Dr. Rossman stated that Plaintiff exhibited symptoms including fatigue; emotional instability, troubling walking, and forgetfulness. Further, during Dr. Rossman's neurological exam of Plaintiff, he noticed that she had poor finger-to-nose and rapid alternating movements with the left upper extremity compared to the right, and left hemiparesis. Generally, Dr. Rossman noticed that Plaintiff exhibited weakness on her left side. Moreover, Dr. Rossman reviewed Plaintiff's MRIs "in detail" and noted that the July 16, 2004 MRI "demonstrated a definite increase in lesion number and burden." This objective evidence led Dr. Rossman to conclude that Plaintiff's MS was active. Indeed, because of the severity of Plaintiff's MS, which Dr. Rossman ascertained from his examination of Plaintiff and his review of the medical documentation, he had Plaintiff begin Avonex immunomodulatory therapy to prevent the MS from entering into its progressive stage.

---

[2] See *Pollini v. Raytheon Dis. Employee Trust,* 54 F.Supp.2d 54, 59 (D.Mass.1999)("the claim administrator's rejection of a claim solely on the basis of a purported lack of objective evidence is troubling and questionable."); see also, *May v. Metropolitan Life Ins. Co.,* 2004 WL 2011460, *7 (N.D.Cal. Sept.9, 2004) (holding that "MetLife abused its discretion by requiring the Plaintiff meet an additional requirement for eligibility beyond those imposed by the plan. The administrator cannot exclude a claim for lack of objective medical evidence unless the objective medical evidence standard was made clear, plain and conspicuous enough in the policy to negate Plaintiff's objectively reasonable expectations of coverage....").

In addition to observing symptomatology consistent with MS, Dr. Rossman also noticed that Plaintiff was "crying easily without warning." This, coupled with information gained from conversations with Plaintiff, armed him with enough knowledge to reach the conclusion that Plaintiff was also suffering from depression. Hence, it was Dr. Rossman's diagnosis that Plaintiff's MS was active coupled with Plaintiff suffering from depression, which led him to conclude that Plaintiff was disabled and incapable of working.

Dr. Rossman's conclusions were consistent with Drs. Holmstrom's and McKee's and Mr. Wines' observations and conclusions. Both Mr. Wines and Dr. McKee noticed that there was a problem with Plaintiff's gait. Additionally, during Plaintiff's visit with Mr. Wines, she made involuntary movements. These movements coupled with her problems walking led Mr. Wines to conclude that these symptoms were attributable to Plaintiff's MS. Moreover, the objective tests that Drs. Rossman and McKee performed indicated that Plaintiff had weakness on the left and also revealed symptoms consistent with a MS diagnosis.

Everyone who examined Plaintiff noticed that she was tearful and in need of some psychological attention because of her emotional instability. Indeed, when Dr. McKee examined Plaintiff, she noted that Plaintiff was under "great stress." Mr. Wines mentioned Plaintiff's inability to concentrate. Accordingly, Plaintiff presented objective evidence to support a diagnosis of depression.

It is undisputed that none of Broadspire's physicians nor its psychologist examined or talked with Plaintiff. Their findings were based solely on the medical documentation that Broadspire received from Plaintiff. Whether a doctor has physically examined Plaintiff is one factor that this court may consider in determining whether a plan administrator acted arbitrarily and capriciously

14

in giving greater weight to the opinion of its consulting physician. *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston* 419 F.3d 501, 508 (6th Cir. 2005).[3] Indeed, in *Clavert v. Firestar Finance Inc.,* 409 F.3d 286, 295 (6th Cir. 2005), the Sixth Circuit has held that "the failure to conduct a physical examination ... may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." see also *McDonald v. Western-Southern Life Ins. Co.,* 347 F.3d 161, 170 (6th Cir. 2003)("The evidence presented in the administrative record did not support the denial of benefits when only [the administrator]'s physicians, who had not examined [the claimant], disagreed with the treating physicians."). This court finds that the opinions of Broadspire's peer review professionals do not outweigh the opinions of Plaintiff's treating physicians and therapist. Consequently, Plaintiff's claim for STD benefits should have been granted.

### IV.
*Conclusion*

**IT IS ORDERED** that Defendant's Motion for Entry of Judgment [D/E 19] is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reversal of Short Term Benefits [D/E 21] is GRANTED.

**IT IS SO ORDERED**.

DATE: January 14, 2008      s/ Anna Diggs Taylor
      Detroit, MI      ANNA DIGGS TAYLOR
                                                    UNITED STATES DISTRICT JUDGE

---

[3] It is important to note that the instant case is being decided under the less stringent *de novo* standard.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 14, 2008.

<pre>
                              s/Johnetta M. Curry-Williams
                              Case Manager
</pre>